IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| COREY MATTHEWS, #168496, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-CV-870-WHA |
| | ) | [WO] |
| | ) | |
| CLARENCE HAYMONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed *pro se* by Corey Matthews ("Matthews"), a convicted inmate at the time his claims arose, challenging the constitutionality of actions which occurred in August of 2012 during his confinement on a parole violation at the Covington County Jail. On September 15, 2015, the court entered summary judgment for the defendants on all claims except the excessive force and failure to protect claims lodged against Clarence Haymons ("Haymons"), a former correctional officer at the Covington County Jail, and Bill Blue ("Blue"), a Sargent at the jail and Haymons' supervisor at all times relevant to the complaint, and therefore terminated all defendants except Haymons and Blue. *Doc. No. 98*.

The Magistrate Judge conducted an evidentiary hearing on October 14, 2015, *see* 28 U.S.C. § 636(b)(1)(B), regarding Matthews' remaining excessive force and failure to protect

claims.[1]  The challenged use of force by Haymons and alleged concomitant failure to protect by Blue occurred on August 28, 2012 at the Covington County Jail at approximately 10:30 p.m. immediately following lock down of A-Block.  After careful consideration of the evidentiary hearing testimony and the exhibits previously submitted by the parties, the Magistrate Judge finds that judgment should be entered in favor of the plaintiff on his excessive force and failure to protect claims lodged against Haymons and Blue.

## II.  EVIDENTIARY HEARING

### A.  Issues

The evidentiary hearing proceeded on the issues of whether Haymons subjected Matthews to an unprovoked and malicious use of force by throwing Matthews to the floor and repeatedly hitting and/or kicking him and whether Blue witnessed an excessive use of force by Haymons from which Blue provided Matthews no protection.  As evidentiary support for his claims, Matthews relies on his testimony and the testimony of an inmate witness, Timothy Bernard Edwards.  For their defense, the defendants presented the testimony of Blue.  The parties also referenced various evidentiary materials previously filed with the court as exhibits and contained within the record of this case.

### B.  Relevant Testimony

Inmate Edwards testified he was in the cell with Matthews when the altercation with

---

[1] None of the parties filed a jury demand.  Testimony presented at the evidentiary hearing established that Clarence Haymons is deceased.

Haymons occurred. Edwards testified that during the time immediately preceding the incident at issue Matthews did not act disrespectfully towards Haymons and obeyed all orders issued to him. Edwards further testified that once Haymons completed locking down the cell block Haymons started to exit the area when, for no apparent reason, Haymons turned around, approached his cell in an aggressive manner, threatened to "kick [Matthews'] a--," advised he was transferring Matthews to lock-up and ordered Matthews to gather his personal items for such transfer. Edwards testified that Haymons entered the cell, Matthews turned his back towards Haymons to collect his personal items, Haymons grabbed Matthews by the back, threw him out of the cell, slammed him to the floor and dragged him down the cell block by his leg. Edwards stated he observed Haymons make swinging and kicking motions towards Matthews while Matthews was on the floor but because of a partially obstructed view he did not see Haymons actually strike Matthews. According to Matthews' sworn testimony, he was locked down in his cell at the Covington County Jail on the night of August 28, 2012. Matthews testified that after Haymons completed locking down the cell block Haymons began to exit the cell block but abruptly returned to his cell and confronted him. Matthews further testified that Haymons appeared extremely angry, threatened Matthews with physical harm and ordered him to gather his belongs because Haymons advised he was transferring Matthews to lock-up on C-Block. At some point during this verbal exchange, Haymons requested that Sgt. Blue, who was in the control room of the jail, roll open Matthews' cell and Blue opened the cell. Matthews testified that he questioned

Haymons with respect to the reason for his transfer to C-Block because he had not done anything to warrant this adverse action. Matthews testified that as he turned to gather his property in compliance with Haymons' orders Haymons grabbed him from behind, slammed him to the floor injuring his left leg, dragged him out of the cell by his right leg to the area outside the door to the control room, where Blue stood with the door open, and in direct view of Blue "kicked him again." Matthews testified that he asked Blue "[a]re you just going to let the man kick me? And [Blue] shut the door." The testimony presented by Matthews also demonstrated that, despite Blue's ability to order Haymons to cease his use of force without exiting the control room by simply pushing a button which allows the control room officer to communicate with officers on the cell block, Blue took no such action. Matthews testified that at this time another correctional officer, Jesse Davis, arrived on the scene and the attack ceased.[2] Matthews testified he advised Officer Davis that his leg had been injured during the altercation and Officer Davis placed him in a wheelchair and

[2]The evidence set forth at the evidentiary hearing established that Officer Davis had personal knowledge of facts relevant to the allegations set forth in the complaint with respect to knowledge of the circumstances surrounding the latter part of the altercation, the removal of Matthews from the cell block after the altercation and the injury Matthews claimed he suffered during the altercation. Nevertheless, counsel for the defendants did not provide an affidavit or declaration under penalty of perjury from this officer as an exhibit to the defendants' special report or their supplemental special report. It appears to the court that the failure to submit an affidavit or declaration from Officer Davis as an exhibit to these reports violated the directives of the order entered on October 12, 2012 (Doc. No. 5 at 1-2, ¶ 2). Although counsel attempted to correct this omission ***after*** completion of the evidentiary hearing by filing a motion to supplement the special report/motion for summary judgment, the court denied this motion. *See Order of October 21, 2015 - Doc. No. 110*. In addition, despite the testimony of Sgt. Blue that Officer Davis "should have" prepared a written statement immediately after the altercation for placement in Matthews' jail file, the record before the court demonstrates that Davis did not prepare such a statement. *See Defendants' October 16, 2015 Response - Doc. No. 107*. With respect to the time counsel was allowed to file this response, the court takes exception to counsel's assertion that the court stated he "could have 'several days' to determine the existence of Corrections Officer Davis' statement and to locate and submit such statement if it existed." *Id*. at 1. Instead, a review of the recording of the evidentiary hearing demonstrates that counsel requested and was permitted "a couple of days" to provide the requested information to the court.

removed him from the cell block.

At the time of the incident about which Matthews complains, the defendants served as correctional officers at the Covington County Jail. Defendant Blue testified that on the day of the incident he was Haymons' supervisor and manned the control booth at the jail. Blue testified jail policy mandated that the control room officer remain in the control room at all times for security purposes but conceded that while in the control room he had the ability to communicate with officers on the cell blocks of the jail.

Blue testified on direct examination that immediately prior to the physical altercation Haymons motioned for him to open Matthews' cell and he opened the cell via electronic means from the control booth. The direct testimony provided by Blue was that Haymons did not enter the cell nor did Haymons drag Matthews out of the cell; instead, Blue testified that Matthews came out of the cell in "a normal walk" at which time Haymons "grabbed" Matthews, Matthews "snatched away from [Haymons] . . . and then they went around and around and onto the floor." Blue further testified that when Haymons and Matthews reached the hallway of the pod he opened the door of the control room. Blue stated that he did not at any time observe Haymons hit or kick Matthews nor did he deem it necessary to intervene on behalf of Matthews. Blue also testified that he agreed with the recitation of facts set forth in Haymons' written statement describing the altercation with Matthews.[3]

---

[3]In the relevant portion of this statement, Haymons asserts that "[w]hen Sgt. Blue rolled the door Matthews charged the door. At this time I grabbed him to keep him from running out of the block. He began to fight and be combative. I continued to escort him to c-block. He tried to jump on me again so I placed him on the floor and

When responding to questions posed by the court, Blue attempted to alter his testimony to exaggerate the manner in which Matthews exited the cell, an action for which the court admonished the witness.[4] Blue also acknowledged that, contrary to an assertion in Haymons' statement, a statement to which Blue previously testified he agreed with its contents, Blue conceded that he did not see Matthews attempt to run past Haymons or "jump on" Haymons. Furthermore, during cross examination by the plaintiff, Blue acknowledged that he did not observe the entire incident, a direct contradiction to a statement contained in his affidavit, *see Defendants' Exhibit 1 (Aff. of Bill Blue) - Doc. No. 39-1* at 1, ¶4-¶5, but only observed "most of" or a "majority of" the altercation between Haymons and Matthews. In light of this concession, Blue admitted that he did not witness who instigated the altercation after Matthews exited the cell. The evidence is undisputed that Matthews did not receive a disciplinary for any action related to the altercation with Haymons.

The testimony submitted at the evidentiary hearing showed that Blue contacted the jail's nurse, Pamela Gorum, within a few minutes of the incident and she thereafter conducted an examination of Matthews. The nurse observed only minor injuries to Matthews. However, based on his complaints of pain, she ordered that Matthews be transported to the Andalusia Regional Hospital for evaluation. *Defendants' Exhibit 4 (Aff.*

---

continued to escort him to C-Block. At no time during this altercation did I use my fist or feet on this inmate." *Defendants' Exhibit D - Doc. No. 39-9* at 2.

[4]Blue initially testified Matthews exited the cell utilizing a "normal walk." When questioned by the court, Blue stated Matthews was "walking rapidly maybe."

*of Pamela Gorum) - Doc. No. 39-4* at 1. The medical records from the Andalusia Regional Hospital establish that Matthews underwent triage assessment by the hospital's emergency room personnel at 12:23 a.m. at which time he complained of left knee pain. *Defendants' Exhibit C - Doc. No. 39-8* at 2. An examination of Matthews' left knee showed an intact joint with normal range of motion. *Id*. at 5. An x-ray was also taken of his left knee. *Id*. at 2-3. The x-ray report demonstrated that the "AP, lateral, and oblique views show no fracture or effusion. The joint spaces are maintained." *Id*. The attending physician diagnosed Matthews with a "contusion" or bruised knee, *id*. at 5, and provided Matthews a nonsteroidal anti-inflammatory medication, Toradol, while he was in the emergency room. *Id*. at 2. At 1:25 a.m., the attending physician determined Matthews' condition was "improved" and "stable" and ordered his release from the emergency room. *Id*. at 5. The attending physician did not order any further treatment for Matthews. *Id*.

Medical records from the Alabama Department of Corrections submitted by Matthews indicate that upon his intake at the Kilby Correctional Facility on the morning of August 31, 2015, approximately 58 hours after his return to the Covington County Jail from the emergency room, a nurse examined Matthews and noted only "swelling" in his left knee. *Plaintiff's Exhibit D to the Response in Opposition - Doc. No. 55-4* at 1. An x-ray performed after Matthews' transfer to the custody of the state prison system was also negative for any structural injury to his left knee. *Id*. at 6. Subsequent evaluations by correctional medical personnel indicated that Matthews had a "probable MCL sprain" in his

left knee. *Id*. at 8. Although Matthews referenced torn ligaments during his cross examination of Sgt. Blue and alleged that he needed "surgery" on his knee, *Attachment to the Complaint - Doc. No. 1-1* at 4, the only credible evidence regarding any injury suffered by Matthews as a result of the altercation with Haymons is set forth in the medical records which establish that Matthews experienced swelling in his left knee due to a sprained ligament for which surgery was not necessary or warranted.

## III. DISCUSSION

### A. Excessive Force Standard

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475

> U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S. Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Id*. at 1301.

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. 503 U.S. at 9; *But see Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Whether a defendant's use of force is excessive, and thus violative of an inmate's right to be free from cruel and unusual punishment, "depends on whether the [defendant's] act 'shocks the conscience,' *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force "'was

applied . . . maliciously and sadistically for the very purpose of causing harm.'" *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *Brooks v. Kyler*, 204 F.3d 102, 103 (3d Cir. 2000) (holding there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to present an excessive force claim).

Notwithstanding that a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in serious injury. *Hudson*, 503 U.S. at 8. Rather, the key inquiry under *Hudson* is whether the alleged conduct involved "unnecessary and wanton infliction of pain." *Id*. While the Supreme Court recently emphasized that its holding in *Hudson* did not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm,'" the Court noted that to require a showing of significant injury "would permit any physical punishment, no matter how diabolic or inhuman," absent some quantum of injury. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7, 9). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue

an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 38. The absence of serious injury, however, is not irrelevant as "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover." *Id*. at 40

**B. Evidentiary Analysis**

After listening to each of the witnesses and duly considering all of the evidence, the court finds that the testimony provided by Matthews and his inmate witness regarding the disputed events is the most credible.[5] The credible evidence before the court corroborates Matthews' testimony regarding the absence of any need for the use of force by Haymons, the use of excessive force by this officer and the failure of Blue to intervene to protect Matthews from such force. Specifically, the testimony of Matthews and Edwards establishes that Haymons, absent justification, confronted Matthews, threatened him with bodily harm and ordered that Matthews gather his property for transfer to lock-up. Although Matthews questioned the basis for this transfer, he obeyed the order issued to him by Haymons. The testimony of these witnesses likewise demonstrates that Matthews turned away from Haymons to collect his property for transfer to lock-up when Haymons entered the cell, grabbed Matthews by the back, threw him to the floor, hit and kicked him, dragged him down

[5]The demeanor of both Matthews and his inmate witness indicated forthrightness and believability, whereas Blue's demeanor during his testimony subverted his credibility. Specifically, at times, Blue appeared evasive and uncomfortable. When the court posed questions to Blue, he attempted to alter his prior testimony regarding the manner in which Matthews exited the cell. Moreover, the contradictions and inconsistencies in Blue's testimony when viewed in comparison with other evidentiary materials submitted by the defendants, including an affidavit from Blue, further serve to undermine the credibility of his testimony.

the cell block and kicked him again. Both Matthews and Edwards testified that Matthews did nothing to provoke the use of force by Haymons and did not pose a threat to the security of the jail at the time of the incident. Matthews also testified that Blue witnessed the improper use of force and failed to intervene on his behalf. Finally, the undisputed medical records filed by the parties demonstrate that Matthews suffered an injury to his knee when Haymons initially threw him to the floor. The court does not find credible or corroborated by credible evidence the testimony of Blue with respect to the disputed issues of fact pending for disposition.

In light of the foregoing, the court finds that the evidence which it deems credible corroborates Matthews' testimony regarding the lack of the need for the use of force, the use of excessive force by Haymons and the failure of Blue to intervene to protect Matthews from the application of such force. Consequently, based on the evidence presented by Matthews at the evidentiary hearing, the court concludes that Haymons used force against Matthews not in an attempt to maintain or restore discipline but rather maliciously and sadistically for the purpose of causing harm and Blue failed to intervene in the face of an excessive use of force against Matthews.

**C. Assessment of Damages**

The remaining question before the court concerns the amount of damages to which Matthews is entitled. It is undisputed that Matthews suffered a moderate injury to his left knee in the altercation with Haymons. During the evidentiary hearing, Matthews presented

no evidence of any other injuries. Based on the foregoing, the court concludes that Matthews should receive a total damage award of five-hundred dollars ($500.00) from defendants Haymons and Blue.

## IV.  CONCLUSION

In sum, the credible evidence establishes that a constitutionally impermissible use of force was undertaken by Officer Clarence Haymons against Corey Matthews.  The aforementioned evidence further demonstrates that Sgt. Bill Blue failed to intervene to protect Matthews from the unwarranted use of force by Haymons.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Judgment be entered in favor of the plaintiff and against defendants Haymons and Blue on the excessive force and failure to protect claims.

2.  The plaintiff be awarded five-hundred dollars ($500.00) in damages for which the defendants are jointly and severally liable.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 5, 2015**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the

District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 22nd day of October, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE